Good morning, Your Honors. Philip Garrett Panetz on behalf of Eileen McGrew. Your Honors, if the IRS were to take Ms. McGrew's house, it would be one of the most inequitable, unjust results. Mrs. McGrew did not owe any of the taxes. One of the most inequitable results of what? All the results in this? I'm sorry, Your Honor? Among all the inequities that the courts have done, this would be one of the most? I think it would be one of the most inequitable things that I would have seen as a lawyer. Well, let me ask you, if the government were to prevail, is it correct that Ms. McGrew would receive about $130,000? The exact amount that she would receive would be one-half of the equity in the house. In other words, whatever the community property interest of Mr. McGrew, debatably whatever his interest in the house would be, that she would receive her community property interest. That being said, the United States v. Rogers provides a weighing test for equitable factors to weigh for this court. And on every single one of the factors, which I'll lead you through, Mrs. McGrew should win on the equity. Now, the Rogers court basically said that this is not a bright-line test. It's a common-sense approach. And some of the courts that have quoted Rogers have indicated that it would be egregious and extremely inequitable for the non-liable party to owe the taxes for the liable party. Don't forget, in this case, Mr. McGrew embezzled the community property funds. He took the community property funds and went off to Arkansas with his girlfriend. The first test in the Rogers case is a weighing between the IRS's right to collect the taxes and the harm that would befall the taxpayer in this case, Mrs. McGrew. The IRS and Judge Reel in the district court indicated that the IRS would be harmed if they were not able to collect the taxes in this case. But I would maintain that not only is Mrs. McGrew more harmed, but the equities favor Mrs. McGrew because the IRS never made any showing that they went after Mr. McGrew, who is the taxpayer that owed them the taxes. Mr. McGrew had the funds to be able to pay the taxes. All the cash was taken with him to Arkansas. He could have easily paid the taxes, and this was his tax liability, not hers. He took the funds. Did the IRS make a showing at all that they tried to collect from him? They were unsuccessful, and that's why they're going after the house? No. They made no showing. And, in fact, when we inquired about that, they said, we can't reveal anything with regard to what we've tried to collect from Mr. McGrew because that would violate his privacy. So we have no knowledge of any actions that they've taken in this case with regard to collecting from Mr. McGrew. The second factor, which is brought up in the Rogers case, is what were Mrs. McGrew's legal expectations? Now, the IRS, in their brief, says her perception of her expectations did not govern. It's the legal expectations. But, Your Honor, she's a layperson, and when a judge, a family law court judge, says that she doesn't have the liability her husband does, that the tax liability is his liability, and requires that he sign an interspousal transfer deed, I would think that rises to the level of legal expectancy, that from her perspective, here's a family law court judge who's saying that she doesn't have any liability for these taxes, and that her legal expectancy at that point rises to the level of she has title to the house. There was a deed transferred, required by the court. So on that factor, too, I think her legal expectancy was very valid. Didn't it say that it was subject to liens? What's that? Didn't the judge's order say that it was subject to liens? He acknowledged that there were tax liens, but he did not say that the house was subject to the tax liens. What does that mean? You transfer it, and then the house is subject to liens. What did he say about the liens? He acknowledged that there were tax liens, and quite frankly, and he's a family law judge, I think his knowledge of the tax law. I know, but you're trying to rely on what he said. I'm trying to relate back to her legal expectancy for this factor. Based on what he said, and he said that there were tax liens against the house. And that those tax liabilities were solely the responsibility of her ex-husband. So her legal expectancy was that her ex-husband was liable for it, not her. On the third Rogers factor, which has to do with whether or not there'd be harm to the non-liable taxpayer, in this case, Ms. McGrew, even Judge Real acknowledged that on this factor, the factor favored Ms. McGrew. She not only would be kicked out of her house, the only house that her son has known growing up in, removed from the school district, and then having to replace the house and try to purchase a house that would be far less in value because she would get so much less of the equity out of it. But also, she's been paying the property tax and the mortgage on this house from time memorial when this divorce happened. So for 13 or 14 years, she's been paying the mortgage and paying the property tax. I think all the equities on this factor, in the Rogers case, absolutely favor Ms. McGrew. How old is the son now? He's 17. I'm sorry, he's 13. That was younger, that's what I recall. That's right. Okay, so in what grade, do you know what grade he's in now? Eighth grade. Eighth grade. So he'll be done, presumably, if he passes his grades, in four and a half years or so, he would be out or done with high school. Is that right? Let's hope so. Okay. That could be a different kind of case, I guess. But I guess the question is, is that has there been any mediation or discussion to try to set up something where, look, the IRS, they want their money, and the IRS ultimately usually gets their money. But is there a way, there's been any discussions to structure this so that event would not occur for four and a half years until the time when the son has graduated from high school? There have, quite frankly, been some discussions with the Justice Department regarding some kind of deferral. But there's nothing on the table where I could make a representation to this Court that that is going to happen or that there is some kind of agreement. So there have been loose discussions about it. Do you think that our Ninth Circuit mediation program would be helpful at all in this case? Have you guys tried that? I think the Justice Department indicated that that would not. I mean, I'm always open for mediation and was willing in the beginning to go there. The Mediation Department contacted us and basically said the Justice Department was not willing to do so. I can't put words in their mouth, but I know that we were willing at that time. And would you still be now? I would certainly prefer Your Honors to make a decision in our favor than mediation. Okay, fair enough. I would like to address the fourth factor. What does that answer mean? Your question wasn't what is your preference. The question is would you be amenable, I think, was Judge Owen's question. I wouldn't object. All right. Okay. So with regard to the fourth factor, the fourth factor, I think, is one that sometimes the courts get confused. It's a weighing between the interests of the non-liable spouse and the liable spouse. And in this particular case, that factor really is almost irrelevant because the liable spouse has absolutely no interest in the property. He's not going to be harmed if Mrs. McGrew's house gets taken away from her. He has zero stake in this action. So with regard to that particular factor, the equity is all in favor of Mrs. McGrew. With regard to the liens, Your Honor, actually, I think what I'd like to do is reserve what remaining time I have and listen to the Justice Department's argument. Thank you. Unless you have questions. No, thank you. Good morning, Your Honors. My name is Melissa Briggs. I represent the United States of America in this case. This is not an inequitable or unjust result. We are not seeking to hold Mrs. McGrew liable for her ex-husband's tax debts. We are seeking to foreclose tax liens against her that had attached to the property, for which notices of tax liens were duly filed in the county recorder's office, in which her attorney acknowledged in its pleading. You can look at JA-277 and 278. Her attorney in the divorce proceedings indicated there is a federal tax lien on the property in the amount of $247,000 as of October 2006. The judge, as you were asking the question to opposing counsel, Judge Reinhart, at 265 JA, in the court's order, says there is an IRS tax lien which encumbers the property. This tax lien is what we're foreclosing on based on the 2000 through 2005 tax liabilities of Mr. McGrew. My opposing counsel spent most of his time on the Rogers factors, so I will focus my argument there. The review of the district court here is for abuse of discretion, as you well know. This is not a case where they're alleging that the district court here applied the wrong legal rule. Everyone is applying the Rogers factors as articulated by the Supreme Court. So the question then is whether the district court drew factual conclusions that were illogical, implausible, or without support in the record. So as my opposing counsel did, I'm also going to go through these Rogers factors. He spent a lot of time on Rogers factors number one, which is prejudice to the United States of a partial sale. Unfortunately for him, although he made this argument in his reply brief, in his pleadings in the district court, quote from document 33, page 17, which is his cross motion for summary judgment, this factor does not seem applicable in this case because as a practical matter, the sale or non-sale of Eileen McGrew's house is an all or nothing event. The government doesn't have to make a showing that we tried to collect from other sources. We have an interest in the prompt collection of taxes. We have a statute limitation here. Maybe not, but if this is an equitable matter under the Rogers factors, don't you think it would be more equitable to get the money from the husband if it were easily done? Well, we have a judgment against him, Your Honor. You can take judicial notice of it because it's on the record in the Western District of Arkansas. I can give you the case number if you'd like. But this is his property interest, and tax liens must be acted on just like any other tax that's assessed within 10 years of assessment. This is the real property to collect from. The prompt and certain collection of taxes is important on behalf of all American taxpayers who pay their taxes. Even those who have a billion dollar tax loss? I'll take it. Never mind. I like the attempt at humor, Your Honor. So we don't have to make a showing that just like in cases of joint and several liability, we don't have to show that we can't collect from one to do the other. But again, he's already waived that. Secondly, the legally recognized expectation interest. She was represented by counsel in the divorce proceedings, and the divorce attorney stated there is a mortgage on this house, in effect $150,000. There is a tax lien, $247,000. The lawyer acknowledged it. Tax lien law is clear. There is nothing like death in taxes. You cannot, it is black letter, Supreme Court precedent that you cannot void a valid tax lien by having a subsequent transfer. Moreover, in addition, the other problem for the appellant here is that, again, they were on cross motions for summary judgment. She did not present in response to the government's position that this was not a proper legally recognized expectation interest, for example, witnesses or other information, only the statement that, oh, a tax preparer told me in the record that the government wasn't going to foreclose on his tax lien. If this was something that could be developed or that the district court should have weighed in a different way, remanded this is not appropriate here because they never asked for a hearing. The third issue has the potential prejudice to the third party. And as Judge Riall said, in every case where the government forecloses on tax liens when third parties are in possession of the property, which you can shepherdize Rogers, it happens a lot, that this case she was no more prejudiced any more than any other case when an innocent former spouse is involved. Again, she made a few statements in an affidavit about her son being in school and that she couldn't afford comparable housing. But again, this was on a cross motion for summary judgment and she was not interested in saying, Judge, I would like to make a showing of how this is going to prejudice me in some way that's greater than any other person. For example, in some of the cases that were in the reply brief that they cited, I'm dying of cancer. I'm on Social Security. I have no way to live anywhere else than this trailer on swampland in Florida. So that was not part of their case. And finally, the comparative property interest. The entire property was subject to liens because of the community debt for 2000. And even if you try to do this, I think that he's arguing for a percentage calculation of the amount that will go to each party, which would go to Judge Reinhart's initial question of how much equity she would get in the house. So I did that calculation based on the amount of the party stipulated to in the state order. There's a stipulated stay in this case and there was stipulation that the minimum value of the home was five hundred thousand dollars. The mortgage as of the last number I have is from 2014 was about one hundred seventeen thousand dollars. So that would leave three hundred and eighty three thousand dollars. And I'm just going through if you're asked. I want to know. I'm going through the judge's order. So it's divided in half would be one ninety one five. So currently the community debt, the 2000 tax year is about sixty four five. As of last week, I had them run it for me because, you know, I'm a lawyer, not an accountant. So that would be thirty two to five for my liens half. So subtracting that from the one ninety one five gets one fifty nine approximately. And that would be doing the math that some of the courts employ to say what percent is going to go to each party. Is it something that's really inequitable, like a thirty six thousand dollar tax lien on a seven hundred thousand dollar house and having a forced sale? Here it would be forty one percent to Eileen and forty nine percent attributed to the former spouse, Kenneth, which would all go to the United States and the California Franchise Tax Board in the order that is stated in the district court's order. Do you have any additional questions you'd like to ask? I'm just curious about the question about mediation. It seems to me that there could be a way through a reverse mortgage or something just to push off this decision. I mean, obviously, like I said, IRS, they want their money. They're going to keep trying to get it. We don't want their house. We want the money to be clear. And my colleague, Mr. Rockmus, he's not here today due to the holiday. And he did offer. It's not in the record, obviously, but I know he did offer settlement possibilities that was rejected. And because of that, that was why we did not pursue mediation in this court. Well, let me ask you this. I'll ask the question I asked your opposing counsel. Do you think mediation could potentially help? Because as you just said, which makes sense, you guys just care about the money, right? Not the house. You want the money. So I don't know if I don't know if mediation would be helpful in the sense that she wants a compromise of our liabilities, of the liabilities, because she thinks this is the greatest injustice ever visited. But we could go to mediation, but we could also, if the solution for her to pay us is a mortgage or something else, then that would be up to her. And I have received zero settlement communication the entire time I've been on this case from counsel. So I do not know what his position would be. But there are, even the cases they rely on, what happens is usually if the district court, again, this is the district court's role, and its discretion will say, no, I waived Rogers. And under Rogers, no, this isn't fair. But there's still a $32,000 tax lien on it, on this house, and it's worth $700,000. You've got to pay it. Get a mortgage. Figure it out. Or if you don't want to, we have to sell the house. Or another case had payments over time to the government so that she could keep the house. But, again, these tax liens are on this property. They're not going away. And counsel is still not acknowledging that. And so until I think that we can get to a position, I don't know if mediation is appropriate or if it's some other type of negotiation, as in not settling the case, because we have a valid judgment. So I can't compromise that on my own. That has to be authorized by someone way up the chain. No, I understand that. But the question was, in terms of being open to mediation, your position is that you are open to mediation? Yes. Thank you. Just one thing I would like to mention to you, and you might tell your office. When the case is scheduled on a holiday, if a lawyer representing the government or any other party asks for a continuance, it will be granted. I mean, the government did not suffer because you were here. Thank you. I was planning to argue the case already, so he's playing the flute in the service today. So I think his talents are much better used there. Well, I don't know about that. But nevertheless, I hope no lawyers felt they had to send a substitute. No, absolutely, Your Honor. I've had this case since it was on appeal, and I briefed it and had already said I was going to argue it before he realized that he wasn't here. But I just did want to mention that I wasn't the one who had had the previous settlement discussions that it was Mr. Rockman who was not here. I would have said he's playing the flute. Okay. Thank you. Thank you. The case is argued. Oh, no. Sorry, we have rebuttal. I don't have much time, Your Honor, but I have a little. And I just want to add the last point. Opposing counsel indicated that, you know, they have their liens, but the liens are a little more complicated than that. There's different types of liens. A lien that's between the taxpayer that owes the money and the government is created immediately upon filing a tax return, and that's called an incoate lien. Some tax commentators call it an invisible lien or a magic lien, but really it's just a relationship between the government and the taxpayer. A recorded lien, a coate lien, is filed with the county recorder's office and puts everybody on notice that there's a lien filed. The liens in this case were recorded after the parties legally were divorced. Not before, I mean, not after the property dissolution, but the legal dissolution occurred on September 14th, 2006, and the recorded liens were filed, some of them, on October 4th, 2006. Interestingly enough, the taxpayer, Mr. McGrew, then went and filed tax returns, and the taxes that were related to those particular liens were abated, and new taxes were assessed based on the actual filing of the returns. New liens were recorded, and those liens were recorded on October 22nd, 2007. Again, after the parties were legally divorced, because the legal, the dissolution was granted September 14th of 2006. Now, we can say that the court was aware of the tax liens at some point during the divorce. The exact date that the liens were made aware to the court and the parties, I do not know. But I do know that before the parties went into the divorce, Mrs. McGrew had no idea that her husband did not pay taxes or that there was a tax liability, and no notice was provided to her from the IRS. Ironically, that situation has now changed in the law. The IRS now always gives notice to both spouses, but not at that time. So she had no way of even knowing, going into the divorce or informing her divorce lawyer, that maybe the negotiations with regard to the property distribution should have been different with regard to the tax lien. She was at a severe disadvantage in that situation. Thank you, Your Honor. Thank you very much. The case just argued will be submitted.
judges: Reinhardt, Fernandez, Owens